## Case No. 14,677.

### UNITED STATES v. BRUNE.

[2 Wall. Jr. 264.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1852.

CRIMINAL LAW—EVIDENCE—OWNERSHIP OF VESSELS—SHIP'S REGISTRY.

On an indictment under a law which makes criminal certain acts done on board a vessel owned in whole or in part by a citizen of the United States, an American registry is not even primâ facie evidence of such ownership; though such registry is made by the government only on the pre-supposition of such ownership, and after oath by one or more persons of such ownership by them. Nor is general reputation of such ownership any evidence of it. Ownership in such a case is a fact to be proved as other facts.

[Cited in U. S. v. The F. W. Johnson, Case No. 15,179; Scudder v. Calais Steamboat Co.. Id. 12,565; same case on appeal, 2 Black (67 U. S.) 388.]

A law of congress for the suppression of the slave trade (Act May 15, 1820, c. 113, § 5 [3 Stat. 601]) enacts that, if any person being of a ship's company of any vessel owned wholly or in part by any citizen of the United States, shall aid and abet in confining any negro, &c., with intent to make such negro a slave, he shall be adjudged a pirate. And an indictment in this case charged that Brune, being second mate of the brig Fame, owned by a citizen and citizens of the United states, did forcibly, feloniously and piratically receive, aid and abet in confining and detaining on board such vessel 400 negroes with intent to make them slaves, contrary to the form of the act of congress, &c. The fact that the defendant had been engaged in

1 [Reported by John William Wallace, Esq.]

a slaving voyage, was perfectly proved: and to prove that the vessel was owned by a citizen and citizens of the United States, the prosecution, without offering to follow it up by other evidence, offered the ship's registry, and evidence of general reputation of ownership, that is to say, "that she was said to belong to citizens of the United States by all persons who talked of her." This registry, as is generally known, is made under an act of congress (Act December 31, 1792 [1 Stat. 287]) declaring what vessels shall be "denominated and deemed vessels of the United States entitled to the benefits and privileges appertaining to such vessels." It prescribes that before the registry can be made, the owner or one of the owners shall swear (among other facts) "that she is owned wholly or in part by a citizen of the United States," after which the registry is made.

J. C. Vandyke. We object to this evidence: (1) The registry offered is not the best evidence; and can only be offered where there is an intention of following it with other and more positive proof of ownership. It is necessary as part of the proof of ownership; but it is not in itself proof of ownership. It is the act of a third party done from motives of pecuniary interest, and is inadmissible to affect the rights of one upon trial for life or death. (2) It is a document, having its origin in statutory provisions. It was unknown to the common or civil law, and was created in England by statute of 12 Car. II. in 1660, for certain purposes; and was afterwards introduced into the French Code, and subsequently in 1792, became by special enactment part of the marine regulation of the federal government. The original English act did not require the owners to be citizens. There is no act upon the subject, either in England or America, making the registry proof of ownership. The registry is required to give the ship a national character, and to entitle the owners to certain privileges, and can only be used for the purposes specified in the acts creating it; and then only in the manner authorized by the act. Ownership is the essence of the case. It is a fact, which must be proved, however difficult, before the defendant can be adjudged a pirate. Common reputation will not do; for common reputation is often a common liar.

Mr. Pettit and P. N. Dallas, in reply, insisted, that the registry was evidence of the national character of the ship, which, by the terms of the registry act, is based upon ownership by citizens of the United States; that independently of this, the general reputation of ownership was the only evidence possible to be produced in establishing that fact. If more was required, it would be impossible to convict any man where the question of ownership arose. The practice, in this court and in the admiralty, has been in cases generally where national character and American ownership is to be proved, to admit the

registry as prima facie proof; and there is no reason why this case should come under a different rule than that which has been generally adopted. We offer it only as prima facie evidence. The other side may show the truth if it does not.

GRIER, Circuit Justice. The very gist of this indictment is the ownership by a citizen or citizens of the United States. The act of congress makes it so. The indictment properly alleges it, and it must of course be proved. The registry, though it may perhaps be evidence of ownership for some purposes, is not even prima facie evidence of it in a criminal prosecution like this; nor would common reputation be. You must show the fact of ownership, as you generally show other facts; proving it by witnesses whom the defendant may cross-examine. The man, who swears that he owns the vessel, may have sworn to an untruth, and she may not be owned, either "wholly or in part, by any citizen of the United States" at all. And even if the persons set forth in the registry as owners, were owners at the date of it, their ownership may in point of fact have ceased before the alleged piracy, though the proper entry or no entry may have been made at the custom-house.

If the act had ordained that the detention, &c., on any vessel "denominated and deemed a vessel of the United States," should be piracy, the case might be different. The registry, whether granted on a true or a false oath, settles that. But the act requires that the vessel be owned by a citizen or citizens of the United States: a different thing and a fact; of which the oath before the collector of customs is no more evidence in a case like this, than an oath before any other person would be. It was extrajudicial, not in this case, ex parte, and without a single requisite to make it evidence.

The prosecution not being prepared with other evidence, the court charged in favour of the prisoner. The jury found a verdict of "Not guilty under the charge of the court: but guilty in point of fact": a verdict, of course, which the court obliged them to alter to one of not guilty.

[NOTE. The following letter from the reporter of 2 Wall. Jr., was found among the papers in this case in the clerk's office:
["To the Hon Messrs. Justices Grier & Kane—Gentlemen· As there is a case now pending before you in which the case of United States v. Brune, reported in 2 Wall. Jr. 264, may possibly be cited, I deem it well to say that that report is the only case in that volume of reports of which I have not a personal knowledge. It was reported from rough notes given to me, and I have reason to think that it was a certified copy of the registry which was offered in evidence, and not the registry itself. The case may or may not be good law: but, as a matter of fact, I believe that the words 'copy or certified copy' should appear in the statement and syllabus. I have mentioned this both to the United States attorney, Mr. Vandyke, and to Mr. Guillon, of the defendant's counsel, and will be obliged, if your honors see fit, that they, along with Mr. Kane, have the perusal of this note. I have the honor to be, with the greatest respect, your obed't serv't, John Wm. Wallace. Walnut and 6th, May 3, 1855"]